# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VERNON T. JONES, | ) |
| Plaintiff, | ) |
| v. | ) No. 10 C 6572 |
| UNITED AIRLINES, | ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vernon T. Jones, *pro se*, alleges that his former employer, Defendant United Airlines ("United"), violated Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 when it discontinued his health, dental, and vision coverage and failed to promote him. United moved for summary judgment on each of Jones's claims. For the following reasons, summary judgment is granted.

## FACTUAL BACKGROUND[1]

Jones is an African-American flight attendant who worked for United from May 7, 1995 until October 29, 2010. (7/21/11 Jones Dep., Ex. A to Def.'s App. of Materials in Supp. of its Mot. for

---

[1] As required by Local Rule 56.1, United has submitted a statement of undisputed facts that it contends entitles it to judgment as a matter of law. L.R. 56.1(a)(3). This court's rules require a party opposing summary judgment to submit "a concise response" to each of the moving party's statements and, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3). Although Jones received notice of the requirements of Local Rule 56.1, *see* Notice to Pro Se Litigant Opposing Mot. for Summ. J. [67], his response to United's motion does not meet those requirements. Jones's response consists only of an employment discrimination complaint form and three pages describing his claims, without a single citation to record evidence or any direct response to United's 56.1 statements. Jones is *pro se*, but even a *pro se* litigant is not excused from compliance with procedural rules, *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), and the court is not required to "scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001). The court has carefully reviewed Jones's deposition testimony and his factual submissions, but where United's fact statements are supported by the record and not adequately challenged, they are deemed admitted.

Summ. J. [70], hereinafter "Def.'s App.", at 33:19, 37:12-14; 7/11/12 Jones Dep., Ex. D to Def.'s App., at 26:19-20.) United, a commercial airline, flies domestically and internationally. (7/21/11 Jones Dep. at 57:23-58:1.) For approximately one year, Jones worked as a domestic flight attendant for United, flying from Washington, D.C. (*Id*. at 58:7-15.) For the remainder of his career with United, he worked as an international flight attendant domiciled[2] at Narita Airport near Tokyo, with the majority of his flights beginning and ending at Narita. (*Id.* at 59:9-60:6.) United does not require that its flight attendants live where they are domiciled, and during his thirteen years as an international flight attendant, Jones's permanent address was in Bangkok. (*Id.* at 51:4-6, 60:7-10.) From 2002 to 2006, Jones flew mostly from Tokyo to Bangkok, but from 2007 to 2010, his primary route changed to Tokyo-San Francisco, and during the last year of his employment in 2010, Tokyo-Singapore. (*Id.* at 61:9-20.) When his primary routes changed, Jones did not notify United that his permanent residence address in Bangkok had changed. (7/11/12 Jones Dep. at 43:13-18.)

From 2005 to 2010, United was a party to a Collective Bargaining Agreement ("CBA") with the Association of Flight Attendants, of which Jones was a member. (7/11/12 Jones Dep. at 43:19-22; Glass Decl., Ex. F to Def.'s App., at ¶ 4.) Under the terms of the CBA, an eligible flight attendant "may elect medical coverage on behalf of herself/himself"; a flight attendant who "fails to make an election for Medical Benefit coverage will be deemed to have waived coverage"; and a flight attendant who "fails to make an election during any succeeding Annual Benefit Open Enrollment will be deemed to have elected to continue the election previously in effect." (CBA § 33(A)(1)(b), Ex. F-1 to Def.'s App.)

Also relevant to this case are the CBA's provisions for a Special Leave of Absence ("special leave"), a temporary leave awarded to employees based on seniority. (CBA § 23(B); Information Packet, Ex. D-2 to Def.'s App., at 0088.) When an employee is approved for a special leave,

---

[2] Jones testified that domicile means "your home base . . . where all your trips begin and are supposed to end." (7/21/11 Jones Dep. at 59:13-19.)

United sends the employee an information packet that explains the effect that the leave will have on the employee's insurance benefits. (Glass Decl. ¶ 4; Information Packet at 0089.) Specifically, when an employee goes on special leave, he does not receive long-term disability coverage and his medical benefits are automatically cancelled unless the employee chooses to enroll in Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage. (*Id*.; Jones Benefits Personal Enrollment Worksheet, Ex. D-3 to Def.'s App., at 0071.) United sends an enrollment packet when an employee returns to work following a special leave, and the returning employee has 30 days to decide to enroll in medical, dental, and vision benefits coverage. (Information Packet at 0089.) If the returning employee was enrolled in long-term disability coverage prior to taking leave, that coverage automatically resumes. (Jones Benefits Personal Enrollment Worksheet at 0071.)

At some point prior to September 22, 2006, Jones applied for special leave. On September 22, 2006, Vicki Hammer of United's Flight Attendant Service Center sent a letter to Jones's Bangkok address, informing Jones that he had been approved for special leave from October 1, 2006 to November 30, 2006. (Letter Granting Special Leave, Ex. D-1 to Def's App., at 0073.) Enclosed with the letter was the special leave information packet, which explained that if Jones did not elect COBRA coverage during the special leave period, his medical, dental, and vision insurance benefits would be cancelled the day before his leave began. (*Id*. at 0075; Information Packet at 0089.) Jones knew he was approved for leave because United posted notice about it at his "domicile." (7/11/12 Jones Dep. at 53:22-54:3.) Jones spent his special leave in Columbus, Ohio, and did not receive the letter or the information packet until he returned to Bangkok during his paid vacation in December 2006. (*Id.* at 54:9-55:4.) Information about United's special leave policy was, however, available to Jones on SkyNet, United's employee Intranet service, before his leave began and after his leave ended. (*Id*. at 56:23-58:15.)

Jones had medical, dental, and vision coverage prior to his special leave. He did not elect

3

COBRA coverage for the leave period because, in his view, "COBRA insurance is for someone who has been separated from their employment and it's not conducive to a 60-day coverage period." (*Id*. at 58:16-19, 59:13-21.) His benefits were therefore automatically cancelled on September 30, 2006, the day before his special leave began. (Information Packet at 0089; Jones Benefits Personal Enrollment Worksheet.)

Jones returned from special leave on December 1, 2006, and his long-term disability coverage resumed the following day. (7/11/12 Jones Dep. at 61:5-6; Jones 2006 Confirmation Statement, Ex. E-1 to Def.'s App., at 0067.) On December 13, 2006, United sent Jones a Benefits Enrollment Worksheet advising him that any elections for insurance benefits that he made by January 12, 2007 would be retroactively effective from December 2 until the end of 2006. (7/11/12 Jones Dep. at 71:23-72:7; Jones Benefits Personal Enrollment Worksheet at 0069.) The worksheet made clear that Jones did not have any current medical, dental, or vision coverage, and explained that if he made no elections, Jones's coverage would default to its current status. (Jones Benefits Personal Enrollment Worksheet.) Jones acknowledges that he did not make any benefit elections before the January 12, 2007 deadline. (7/11/12 Jones Dep. at 72:24-73:2.) On February 22, 2007, United sent Jones a statement confirming that he did not have medical, dental, or vision coverage from December 2 through December 31, 2006. (Jones 2006 Confirmation Statement at 0067.) Although there is no confirmation statement for 2007 in the record, Jones admits that the February 22, 2007 notice also showed that he had no benefit coverage from January 1 through December 31, 2007. (*Id*. at 77:18-24.) He admits, further, that he did not take action to get insurance coverage for 2007. (7/17/12 Jones Dep. at 103:14-16.)

In October 2007, United sent a benefits enrollment worksheet for 2008 to Jones's Bangkok address, confirming that Jones had no insurance coverage at that time but was entitled to elect coverage during the open enrollment period. (Jones 7/17/12 Dep. at 103:22-104:3.) Then, on December 6, 2007, United sent a 2008 Enrollment Confirmation Statement confirming that Jones

4

had again declined medical, dental, or vision coverage for 2008. (*Id.* at 108:22-24, 110:23-111:2; Jones 2008 Annual Enrollment Confirmation Statement, Ex. E-2 to Def.'s App.) Jones received both of those documents at his Bangkok address in early 2008. (*Id.* at 104:4-17, 109:24-110:7.) On March 28, 2008, Jones called United's Benefits Center to ask why he did not have insurance coverage. (*Id.* at 112:1-6.) A customer service representative explained that Jones did not have coverage because he had not enrolled, but also told him that he was entitled to appeal his benefits status. (*Id.* at 112:6-116:1; Benefits Summary Email at 0104.) Jones testified at his deposition that he sent an appeal to the Benefits Service Center, but never received a decision. (*Id.* at 125:12-130:22.) There is no documentary evidence of such an appeal, however, and a detailed chronology of Jones's benefits elections and contacts with the Benefits Service Center, prepared by a United human resources officer, makes no mention of an appeal. Instead, the officer concludes that Jones "did not send in an appeal letter regarding his 2007 or 2008 enrollment of No Coverage. Please note that no calls were received from the employee in the year 2007." (Benefits Summary Email, Ex. F-3 to Def.'s App., at 0104-0105.)

In October 2008, United sent a benefits enrollment worksheet for 2009 to Jones's Bangkok address, and on November 4, 2008, Jones visited United's benefits website and elected medical, dental, and vision coverage for 2009. (7/17/12 Jones Dep. at 122:16-123:7.) From January 1, 2009, until the end of his employment, Jones maintained medical, dental, and insurance coverage through United, and insurance premiums were deducted from his paychecks. (*Id.* at 131:6-12, 194:10-13.) Notably, during the period when Jones did not have insurance, he incurred no medical expenses and United did not deduct insurance premiums from his wages. (*Id.* at 194:14-195:7.)

## **PROCEDURAL HISTORY**

On September 11, 2009, Jones filed a complaint against United with the Equal Opportunity Commission ("EEOC"), claiming that United retaliated against him for filing a previous EEOC

5

charge on or around October 25, 2006.³  (Am. Compl. at 7.)  No copy of the 2006 charge appears in the record, but Jones testified that the 2006 charge alleged that United had denied Jones Family Medical Leave because of his race.  (7/11/12 Jones Dep. at 63:2-21; 7/17/12 Jones Dep. at 141:16-23.)  In the 2009 charge, Jones alleged that United retaliated by dropping his heath insurance benefits following his special leave of absence.  (Am. Compl. at 7.)  On the form, Jones checked the box for discrimination based on retaliation, but apart from referencing his earlier charge, his 2009 EEOC filing did not identify race, color, or other factors as the reason for United's adverse treatment of him.  The EEOC issued a right to sue letter on July 21, 2010.  (*Id*. at 8.)

Jones filed this lawsuit on October 14, 2010, alleging that United retaliated against him in violation of Title VII and 42 U.S.C. § 1981 for filing the 2006 EEOC charge.  (Compl. [1]; 7/11/12 Jones Dep. at 61:15-19, 143:10-144:7; 2d Am. Compl. at 4.)  Jones has also alleged that United failed to train him; that United blocked his access to the employee Intranet system while he was on special leave so that he could not access the special leave information packet; that United failed to reinstate his coverage when he returned from special leave on December 1, 2006 in retaliation for his 2006 EEOC charge; that United refused to reinstate his coverage in 2008 despite his requests; and that United used deceitful practices to deny him health insurance coverage.  (2d Am. Compl. at 5-9; 7/11/12 Jones Dep. at 61:4-62:13.)

Jones contends that similarly-situated workers were treated more favorably.  For example, Jones asserts that a Caucasian flight attendant, William Coe, did not elect COBRA coverage while Coe was on special leave, but did not lose his insurance benefits.  Jones's evidence of Coe's

---

³  Jones's September 11, 2009 EEOC complaint alleges that the original EEOC complaint, for which Jones claims United retaliated against him, was filed on or about October 25, 2006. (Am. Compl. [45], at 7.)  In his response to United's motion for summary judgment, Jones instead identifies the date of the initial EEOC charge as September 25, 2006. (Pl.'s Resp. to Def.'s Summ. J. Request & 2d Am. Compl. [74], hereinafter "2d Am. Compl." at 2.)  This court later granted Defendant's motion to strike the second amended complaint. (10/16/12 Minute Entry [79].) Nevertheless, the court addresses the allegations Jones made in that complaint here because it is the only substantive response Jones made to United's motion.

favorable treatment consists only of his own testimony about what Coe told him; Jones did not offer (and in fact did not see) any documents relating to Coe's insurance benefits.[4] (7/17/12 Jones Dep. at 179:7-180:14.) Coe was in fact on special leave from September 28, 2006 to December 1, 2006. (Glass Decl. ¶ 5.) United asserts that Coe chose not to enroll in COBRA coverage during his special leave and therefore did not have medical, dental, or vision benefits for that period. (Coe Benefits Personal Enrollment Worksheet, Ex. F-4 to Def.'s App.) When Coe returned from special leave, however, Coe receive a benefits enrollment form and elected medical and dental coverage for 2007. (*Id.*; Coe 2007 Annual Enrollment Confirmation Statement, Ex. F-5 to Def.'s App.) United provided Coe with health benefits following his election, per company policy. (Def.'s 56.1 [68], at ¶ 39.)

Jones also claims he was denied training by United for retaliatory reasons. Specifically, Jones alleged that in retaliation for his 2006 EEOC charge, United failed to select him for the "purser" training program, which would have qualified him to act as lead flight attendant on any flight in which he was the most senior crew member. (7/21/11 Jones Dep. at 64:7-16; 7/17/12 Jones Dep. at 198:22-199:15.) Jones testified he applied for the purser training program either sometime in 2008 or in February 2010.[5] (7/21/11 Jones Dep. at 63:18-20; 4/24/12 Jones Dep., Ex. B to Def.'s App., at 73:2-5.) Jones acknowledged in his deposition testimony that he was not accepted to the program because when he applied he was on a two-year Level 3 or Level 4

---

[4] The transcript from Jones's July 11, 2012 deposition incorrectly identifies the Caucasian flight attendant who was able to retain health benefits while on a special leave of absence, William Coe, as "William Koch." (7/11/12 Jones Dep. at 23:4-25:6, 25:18-20.) In a third deposition session on July 21, 2011, Jones testified that "Koch" was the base manager at Narita. (7/21/11 Jones Dep. at 68:16-69:1.)

[5] Jones testified in his July 21, 2011 deposition that he applied to the purser training program sometime in 2008. (7/21/11 Jones Dep. at 63:18-20.) In his April 24, 2012 deposition, Jones testified that he applied in February 2010, and that he had applied on several other occasions when he lacked enough seniority to enter the program. (4/24/12 Jones Dep. at 74:8-15.)

probationary period, discipline he believes was improper.[6] (Id. at 73:9-73:18; 7/17/12 Jones Dep. at 199:18-200:1.) Under United policy, Level 4 is the final level of discipline before discharge, and Jones acknowledged that he is unaware of any United employee who entered the purser training program while on Level 4 warning status. (7/21/11 Jones Dep. at 73:23-74:7.)

United moved to dismiss Jones's complaint as time-barred. This court initially granted that motion, but later revisited the issue, reasoning that if the alleged adverse action–termination of health insurance coverage–occurred in January 2007, as Jones alleged, then Jones had filed his complaint within the four-year statute of limitations for claims under 42 U.S.C. § 1981. Jones's failure to file his EEOC charge until September 11, 2009, however, means he has no timely claims under Title VII of the Civil Rights Act. In any event, for the reasons explained below, the court concludes that Jones has not shown that there are disputed issues on his discrimination or retaliation claims, and that United is entitled to summary judgment on those claims.

## **DISCUSSION**

**I.     Standard of Review**

The court will grant a motion for summary judgment when "there is no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court "construe[s] all facts and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation marks and citation omitted).

---

[6] In his April 24, 2012 deposition, Jones testified that he was on a Level 4 probationary status when he applied to the purser training program in February of 2010. (4/24/12 Jones Dep. at 73:9-18.) On July 17, 2012, he testified that it was Level 3 status that stood between him and the training program; he did not identify the date on which he applied for training in that session of his deposition. (7/17/12 Jones Dep. at 199:18-200:1.)

## II. Timeliness

To bring a Title VII claim, a plaintiff must file an EEOC charge within 300 days after the unlawful practice occurred. 24 U.S.C. § 2000e-5(e)(1); *Groesch v. City of Springfield*, 635 F.3d 1020, 1024 n.2 (7th Cir. 2011). Jones filed an EEOC complaint against United on or around October 25, 2006, and in a new EEOC charge filed on September 11, 2009, he claimed that United cancelled his employee health insurance benefits and his long-term disability insurance in retaliation for his original EEOC complaint. (Am. Compl. at 7; 2d Am. Compl. at 2.) If United retaliated against Jones on September 30, 2006, when it terminated his coverage due to his voluntary leave, he was required to file his EEOC charge by July 27, 2007. Even if the alleged retaliatory act occurred on February 22, 2007, when United notified Jones that he was not enrolled for 2007, his September 2009 charge was untimely.

Section 1981 claims are governed by a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004); *Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012). United argues that Jones's claim is untimely even under this more generous standard because his coverage was cancelled on September 30, 2006, more than four years before he filed this lawsuit on October 14, 2010. (Def.'s Mem. in Supp. of Its Mot. for Summ. J. [66], hereinafter "Def.'s Mem.", at 9.) Though Jones dates the retaliation as having occurred in February 2007, United points out that February 22, 2007 is the date on which United confirmed in writing that Jones had not enrolled for benefits upon his return from special leave. (Def.'s Mem. at 9; Letter Confirming Benefits, Ex. E-1 to Def.'s App.) Well before that date, United had warned Jones that his benefits would be cancelled at the start of his leave unless he enrolled in COBRA coverage. (Information Packet at 0089; 7/11/12 Jones Dep. at 56:23-58:15.) United had also provided him with a personal enrollment worksheet that notified him that he had no benefits coverage as of December 2, 2006 and instructed him to make elections by January 12, 2007. (Jones Benefits

9

Personal Enrollment Worksheet at 0069-0070.) United took no new action on February 22, 2007, and therefore, it argues, the claim could not have accrued on that date.

In his July 11, 2012 deposition, Jones asserted that this lawsuit is not a challenge to the loss of his health benefits when he began his special leave on October 1, 2006, but instead to the fact that when he returned to work on December 1, 2006, he did not have the same coverage as he did before he went on leave. (7/11/12 Jones Dep. at 60:24-61:11.) Jones's allegation that the discrimination at issue occurred on December 1, 2006 is inconsistent with other language in his pleadings. Nevertheless, the court will assume, for purposes of this decision, that the cause of action accrued on December 1, 2006 and that Jones's § 1981 claim of retaliation is properly before the court.[7] The court will assume, further, that although Jones's EEOC charge appears to be limited to the claim that the denial of his benefits was retaliatory, his § 1981 claim is broad enough to also include his allegations of race discrimination and a retaliatory failure to promote.

## III. Merits

### A. Retaliation Claims

Jones alleges that United retaliated against him for filing a complaint with the EEOC by failing to reinstate his benefits following his return from leave and by failing to promote him. Section 1981 "prohibits . . . retaliation against employees when a contractual relationship exists

---

[7] Jones's first amended complaint alleges that United dropped his health, dental, and long-term disability insurance. (Am. Compl. at 4.) United cancelled his long-term disability insurance on September 30, 2006, the day before Jones's leave of absence began, but automatically reinstated it on December 2, 2006, after he returned to work. (Jones 2006 Confirmation Statement at 0067.) Therefore, unlike his claim that he lost his medical insurance, Jones's claim that United dropped his long-term disability coverage is barred because it is not timely. Even if the claim were not barred, it is meritless for the same reason that his medical insurance coverage claim fails: Jones did not suffer any adverse action resulting from the loss of coverage. He has not claimed that he was disabled at any point, and he did not pay for disability coverage during the period he was uninsured. (Jones 2006 Confirmation Statement at 0067; Jones Benefits Personal Enrollment Worksheet at 0071.) If Jones "prevailed" in establishing that United had improperly canceled Jones's disability coverage during his special leave, the "relief" would consist of an order requiring *Jones to pay United* the unpaid premiums.

between the employer and employee." *Davis v. Time Warner Cable of S.E.. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011). A claim of discrimination or retaliation under § 1981 is evaluated under the same standards as are applicable to claims under Title VII. *Smith*, 681 F.3d at 896. Under those standards, retaliation may be established by either the direct or indirect method of proof. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Under the direct method, Jones must show that after he engaged in statutorily protected activity, United took a materially adverse action against him, and that there is a causal connection between the protected activity and the adverse action. *See Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). Alternatively, under the indirect method, Jones can prevail by showing that (1) he engaged in statutorily protected activity; (2) United took an adverse employment action against him; (3) he met United's legitimate expectations; and (4) he was treated less favorably than a similarly-situated employee who did not engage in protected activity. *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 742 (7th Cir. 2011). Once such a showing has been made, the defendant may offer a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff can survive summary judgment by offering evidence that the defendant's reason was a pretext for retaliating against him or her. *Id.*

### 1. Cancellation of Benefits Claim

Jones claims that, upon his return from special leave, United failed to reinstate his health benefits in retaliation for an EEOC charge he filed in 2006. (7/11/12 Jones Dep. at 61:4-11.) The court concludes this claim fails for several reasons.

There is no dispute, of course, that Jones's filing of a charge with the EEOC is protected activity. *Silverman*, 637 F.3d at 740. What is disputed is whether United took any adverse employment action against him—that is, whether United took any action that caused Jones harm. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003). United insists it took no

action to deprive Jones of his insurance coverage; the sole cause of the loss of benefits was Jones's decision not to enroll in coverage, United contends. (Def.'s Mem. at 11.) The record appears to support United's position, but the court concludes that Jones's insurance coverage claim fails for a more fundamental reason: Jones was not harmed by the denial of coverage at all. He testified that from October 1, 2006 through December 31, 2008, no insurance premiums were deducted from his pay. (7/11/12 Jones Dep. at 81:21-24; 7/17/12 Jones Dep. at 194:14-21.) Once he re-enrolled for 2009, insurance premiums were deducted from his pay. (7/17/12 Jones Dep. at 194:10-13.) He also admitted that he did not incur any out-of-pocket medical expenses from October 1, 2006 through December 31, 2008. (7/11/12 Jones Dep. at 80:16-81:7; 7/17/12 Jones Dep. at 194:22-195:7.) Jones attempted to suggest that he did not seek treatment in 2008 for lack of health insurance, but he admitted that United paid for him to see a doctor at the Narita Airport clinic when he did need medical care. (7/11/12 Jones Dep. at 79:3-19, 83:2-6, 83:15-85:10.) In short, Jones suffered no harm as a result of his "denial" of insurance benefits and therefore did not suffer an adverse action. If anything, United's failure to enroll Jones in health insurance coverage was a benefit: for more than a year, he did not have a health insurance premium deducted from his paycheck. If Jones were to prevail on this claim, the only apparent result would be that he would be required to pay back premiums to United.

Assuming that being denied the opportunity to pay premiums is somehow adverse, Jones has no evidence that this "adverse" action resulted from his earlier EEOC charge. Jones contends he was unable to access the employee Intranet site during his leave of absence; that he received communications about his benefit status only at his remote Bangkok address; that he received a new medical card for 2007 but was also notified that he lacked coverage for that year; and that his "numerous" requests in 2008 to have his coverage reinstated were ignored. (2d Am. Compl. at 4-8.) But none of these circumstances support the conclusion that United took retaliatory action against him in December 2006, as he claims. According to his 2009 EEOC charge, Jones's

original charge of discrimination–the one for which he claims he suffered retaliation–was filed on October 25, 2006. (Am. Compl. at 7.) That filing could not account for United's purportedly blocking Jones's access to SkyNet beginning on October 1 of that year. (2d Am. Compl. at 7; 7/11/12 Jones Dep. at 57:11-16.)[8] United could not have retaliated against him for something that had not yet occurred.

Even if Jones actually filed his 2006 EEOC complaint on September 25, as he now alleges (2d Am. Compl. at 2), the evidence does not support a claim of retaliation. He did have access to SkyNet when he returned from special leave on December 1, 2006 (7/11/12 Jones Dep. at 56:23-58:15), and he received a paper copy of the special leave information packet at his Bangkok address in December 2006. (Id. at 54:9-55:4.) Jones was entitled to make benefit elections for the remainder of 2006 and for 2007 up until January 12, 2007; he had more than a month in which to read the information packet and to discover that he would have to re-enroll for benefits following his special leave. (7/11/12 Jones Dep. at 71:23-72:7; Jones Benefits Personal Enrollment Worksheet at 0069.) Far from preventing Jones from enrolling, United made a reasonable effort to make its benefit enrollment policies and procedures available to him.

That United sent information to Jones's Bangkok address is also not evidence of retaliation. Jones flew mostly from Tokyo to Bangkok through the end of 2006, and when his primary route changed in 2007, he admittedly made no effort to notify United of a need for a change in his permanent residence address. (7/11/11 Jones Dep. at 43:13-18, 61:9-18.) Assuming, as Jones alleges, that United had some responsibility to contact an employee whose flight assignment had changed at some other address than the one provided, nothing would have triggered such a duty here: Jones was still flying to and from Bangkok in 2006 when he went on special leave. (7/11/11

---

[8] Jones had access to SkyNet before he went on leave, after he returned to work on December 1, 2006, and through the end of his employment with United. (7/11/12 Jones Dep. at 57:23-58:15.) If Jones's access to SkyNet was blocked, it occurred before his protected activity on October 25, 2006, and it was restored shortly after.

Jones Dep. at 61:9-18.) When he returned to Bangkok in December 2006, Jones did receive the special leave information packet, notifying him that he would have to re-enroll in employee health benefits following his leave. (7/11/12 Jones Dep. at 55:1-4, 56:10-16; Information Packet at 0089.) A February 22, 2007 letter confirming his non-enrollment was sent to Bangkok, as well. (7/11/12 Jones Dep. at 65:22-66:3, 75:9-77:24; Letter Confirming Benefits.) Jones believes this letter should have been sent to him in Tokyo rather than at his permanent address in Bangkok, but the letter merely confirmed what Jones already knew–that he had elected not to enroll in coverage.

Jones notes that he received a new insurance card in January 2007 (at the Bangkok address) and intimates that this means that the February 22, 2007 letter marked the cancellation of his benefits. (2d Am. Compl. at 6-8; 7/11/12 Jones Dep. at 27:10-23.) But Jones's misunderstanding of United's health insurance policies or his failure to read the information available to him does not change things. The information packet stated clearly that an employee who wanted continued insurance coverage while on leave was required to enroll in COBRA coverage. (Information Packet at 0089.) Jones did not enroll in COBRA coverage and did not re-enroll in United's health plan upon his return from leave. (7/11/12 Jones Dep. at 59:13-21, 67:5-6.) The February 22 letter merely confirmed this choice, and Jones admitted that he never attempted to use the new medical card he received. (*Id.* at 78:10-12.)

Finally, Jones's assertion that he submitted numerous appeals in 2008 to have his benefits reinstated does not create a dispute of fact concerning his claim of retaliation. The record offers little factual support for this assertion, and substantial evidence to the contrary: copies of e-mail messages accompanying the declaration of United Senior Manager Mia Glass provide a detailed list of all communications between Jones and United's Benefits Department. (Benefits Summary Email at 0104-0105.) Those records show that following the receipt of his 2008 Annual Enrollment Confirmation Statement, Jones called the Benefits Service Center on March 28, 2008 to inquire why he had no coverage. (*Id.* at 0104.) A customer service representative explained that he did

not enroll in coverage, and notified him of his right to appeal. (*Id*.) When Jones called again on July 30, 2008 to ask how medical coverage works when an employee is on leave, a customer service representative explained that it was necessary to elect COBRA coverage for that purpose. (*Id*. at 0105.) On November 4, 2008, Jones made benefit elections for 2009, and on November 14, 2008, he called the Benefits Service Center to confirm those 2009 elections. (*Id*.) E-mail messages confirm that United records do not include any appeal regarding Jones's 2007 or 2008 coverage, nor any record of a call made in 2007 or 2009. (*Id*.)

Jones testified that he had several other communications with the Benefits Service Center after the March 28, 2008 call. (7/17/12 Jones Dep. at 123:22-124:14.) He claims that he faxed an appeal letter two or three times in 2008, and called about the status of the appeal twice and was told it was pending. (*Id.* at 124:19-129:20.) As an exhibit to his first amended complaint, Jones attached a copy of a one-page handwritten appeal letter. (Appeal Letter, Ex. C to Am. Compl.) Assuming Jones did send that undated letter when he says he did, it does not establish retaliation. Although there are cases where "a plaintiff can demonstrate causation despite a substantial time lag," the failure to grant an appeal almost two years after the protected activity occurred is far too long to suggest any causal connection. *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 710 (7th Cir. 2011); *see Filipovic v. K&R Exp. Sys., Inc*., 176 F.3d 390, (7th Cir. 1999) (holding that a four-month time lapse between the protected activity and the adverse action is too long to suggest causation). In this case, there is no basis for the conclusion that anyone who neglected or ignored Jones's 2008 appeal was even aware of his 2006 EEOC charge. His effort to establish retaliation under the direct method fails.

Any effort to prove discrimination under the indirect method is similarly unsuccessful. First, as explained earlier, Jones suffered no adverse action from being dropped from insurance coverage during a time when he needed no medical care. Even if there were a basis for concluding that United's actions were adverse, Jones has not identified any similarly-situated employees who

15

were treated more favorably. Jones contends that William Coe took a special leave of absence, did not elect COBRA coverage, and did not lose his insurance benefits (7/17/12 Jones Dep. at 179:7-180:14), but there is no non-hearsay evidence in support of his contention. To the contrary, United's records support the conclusion that Coe is a similarly-situated employee who was treated the same as Jones: Coe, who like Jones was based in Thailand, was on special leave from September 28 through December 1, 2006. (Coe Benefits Personal Enrollment Worksheet; Glass Decl. ¶ 5.) On December 6, 2006, United sent Coe a Benefits Personal Enrollment Worksheet showing that he did not have insurance coverage, demonstrating that Coe did not elect COBRA coverage for his special leave period. (Coe Benefits Personal Enrollment Worksheet.) The worksheet also provided instructions for enrolling in or making changes to current insurance coverage. (*Id.*) On February 22, 2007, United sent Coe a 2007 Annual Enrollment Confirmation Statement showing that he had selected medical and dental coverage for 2007. (Coe 2007 Annual Enrollment Confirmation Statement.) Therefore, Coe lost his insurance coverage while he was on leave, and started receiving coverage again upon his return to work because he re-enrolled.

Jones confirmed that United provided him with its special leave policy and gave him the opportunity to enroll in health insurance coverage. When he first took action to re-enroll, on November 4, 2008, United restored his benefits. (7/17/12 Jones Dep. at 122:16-123:7, 131:6-12.) Jones received the same options as Coe and likewise started receiving coverage again when he elected to re-enroll in United's health plan for 2009. (7/17/12 Jones Dep. at 122:16-123:7.) There is no evidence of retaliation under the indirect method.

### 2. Failure to Promote Claim

Jones has also asserted that United retaliated against him in response to his 2006 EEOC charge by failing to select him for the purser training program, which would have qualified him for the position of lead flight attendant. (Am. Compl. at 4; 7/21/11 Jones Dep. at 64:7-16; 7/17/12

Jones Dep. at 198:22-199:15.) This claim, cognizable only under § 1981 (any such claim under Title VII is untimely), also fails under the direct or indirect methods of proof.

Filing an EEOC charge is protected activity and the retaliatory denial of a promotion is an adverse action. *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). But Jones has not demonstrated a causal connection between his filing an EEOC charge in 2006 and United's denying him a promotion in either 2008 or February 2010. Jones points to no evidence to connect the two events, and the court can find none in the record.

Instead, Jones acknowledged that he was in a disciplinary status that prevented him from entering the purser training program, a status he contends was "fraudulently induced." (7/17/12 Jones Dep. at 199:12-22.) Specifically, Jones notes that the disciplinary job action was issued by Robert Fahl,[9] who was not the base manager at Narita at the time it was issued, and contends that another supervisor at Narita "fraudulently used his authority to issue a level three job action." (7/21/11 Jones Dep. at 68:16-21; 7/17/12 Jones Dep. at 200:6-13.) There is no admissible evidence in support of any of these assertions, nor any basis for a conclusion that the discipline was somehow "fraudulent." Moreover, the time gap between Jones's charge in September or October 2006 and the adverse action in 2008 or 2010 is simply too great to infer any causal connection.

Nor can Jones prevail on his claim under the indirect method, as he lacks evidence that he met United's legitimate expectations or that he was treated less favorably than a similarly-situated employee who did not engage in protected activity. Although it is unclear from Jones's depositions whether he was on a Level 3 or Level 4 probationary period, he was under some form of disciplinary action at the time he applied for the program. (7/21/11 Jones Dep. at 73:9-73:18; 7/17/12 Jones Dep. at 199:18-200:1.) Jones is not aware of any United employee who was

---

[9] Fahl's identity is not otherwise explained in the record. (*See* 7/21/11 Jones Dep. at 115:15-17, 118:1-6.)

permitted to enter the purser training program while on a Level 4 probationary period, and has no evidence of a United employee who was allowed to enter the program on a Level 3 probationary period, either. (4/24/12 Jones Dep. at 73:23-74:3.) There are no disputes of fact on this issue, and United is entitled to summary judgment on Jones's failure-to-train claim.

### B. Race Discrimination

Section 1981 "prohibits race discrimination in the making and enforcing of contracts." *O'Leary*, 657 F.3d at 630. Jones may establish race discrimination by either the direct or indirect methods of proof. *Id.* To prove race discrimination under the direct method, Jones must present "direct or circumstantial evidence that creates a convincing mosaic of discrimination on the basis of race." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 674 (7th Cir. 2012). Alternatively, under the indirect method, Jones must establish that (1) he is a member of a protected class; (2) his job performance met United's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly-situated individual outside his protected class was treated more favorably. *Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 860 (7th Cir. 2010).

Jones alleges no facts to support his race discrimination claim, and there is very little related information in the record. His only argument for race discrimination is that he was retaliated against for filing a race discrimination charge. (Am. Compl. at 5-6; 7/17/12 Dep. at 141:4-142:12.) Jones is a member of a protected class, yet he has not established that his job performance met United's expectations, nor that he has suffered an adverse employment action. As described above, there is no admissible evidence that William Coe was treated more favorably than Jones was. Therefore, Jones cannot prove race discrimination under the direct or indirect method.

**CONCLUSION**

The court concludes that United has shown that there are no disputed issues of material fact on Jones's claims, and that United is entitled to judgment as a matter of law. For the reasons stated above, United's motion for summary judgment [64] is granted.

ENTER:

Dated: February 4, 2013

_____
REBECCA R. PALLMEYER
United States District Judge